## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re:<br>**VENTECH ENGINEERS LP et al.,**<br><br>Debtors,[1]<br>_____<br>**RODNEY D. TOW, CHAPTER 7 TRUSTEE FOR THE ESTATES OF VENTECH ENGINEERS INTERNATIONAL LLC & VENTECH ENGINEERS, LP,**<br><br>Plaintiffs,<br><br>v.<br><br>**FIVE STAR PROPERTIES BROADWAY LLC, VELOCYS, INC., KREG STANLEY, KEVIN STANLEY, BILL STANLEY, JOHNNY VIRGIN, IAN ANDERSON & DOES 1-10,**<br><br>Defendants.<br>_____ | § § § § § § § § § § § § § § § § § § § § § § § § § | **Case No. 17-33203**<br><br>**Jointly Administered**<br><br><br>**Adversary No. 20 -_____** |

## COMPLAINT

Plaintiff, Rodney D. Tow (the "Plaintiff" or "Trustee") in his capacity as the chapter 7 trustee

for the estates of Ventech Engineers, LP ("Ventech") and Ventech Engineers International LLC

("Ventech International" and collectively with Ventech and the other affiliated debtors in the above-

referenced bankruptcy cases, the "Debtors" and each a "Debtor") by and through counsel, Diamond

---

[1] The names of the debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549).

McCarthy LLP, brings this adversary proceeding to recover $8,659,879.00 in addition to all other awards in law and in equity granted by this Court including exemplary damages and attorney's fees. The Trustee alleges the following:

## JURISDICTION AND VENUE

1.      This is an adversary proceeding brought under rule 7001 of the Federal Rules of Bankruptcy Procedure relating to the chapter 7 cases *In re Ventech Engineers LP*, Case No. 17-33203 (Bankr. S.D. Tex., [Houston Div.]) and *In re Ventech Engineers International LLC.*, Case No. 17-33210 (Bankr. S.D. Tex. [Houston Div.]).  These bankruptcy cases are jointly administered under the bankruptcy case styled as *In re Ventech Engineers, L.P. et al.*, Case No.  17-33203 (Bankr. S.D. Tex., [Houston Div.]).

2.      This Court has subject matter jurisdiction because this action relates to Ventech and Ventech International's bankruptcy cases. 28 U.S.C. § 1334(b).

3.      This proceeding is "core." 28 U.S.C. § 157(b)(2)(A), (E), (H), and/or (O).

4.      This Court may enter final judgment or propose findings of fact and conclusions of law in this action.  28 U.S.C. § 157(b)(1); *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011).

5.      Venue is proper under 28 U.S.C. § 1409(a).

6.      This Court may grant the requested relief under sections 544, 548, and 550 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code").

## PARTIES

7.      Plaintiff is Rodney D. Tow, the duly authorized and acting chapter 7 trustee of the estates of Ventech, Ventech International and certain affiliated debtors.

8.      Debtor Ventech is a Delaware limited partnership.  According to Ventech's Statement of Financial Affairs (Doc. 4, Case No. 17-33203), Ventech GP, LLC was its general partner.

9.       Debtor Ventech International is a Texas limited-liability company according to Ventech International's Statement of Financial Affairs (Doc. No. 3, Case No. 17-33210).

10.      Defendant Five Star Properties Broadway, LLC ("Five Star") is a Texas limited-liability company that may be served with process through its registered agent, Kevin Stanley, at 2414 Todville Road, Seabrook, Texas 77586. According to the Texas Secretary of State's office, Defendant Bill Stanley is Five Star's president.

11.      Defendant Velocys, Inc. ("Velocys") is a Delaware corporation, which may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington DE, 19801.

12.      Defendant Kreg Stanley was Debtor Ventech and Debtor Ventech International's director, located at 700 Oak Park Court, Friendswood, Texas, 77546.

13.      Defendant Kevin Stanley was Debtor Ventech and Debtor Ventech International's director, located at 2414 Todville Road, Seabrook, Texas 77586.

14.      Defendant Bill Stanley was Debtor Ventech and Debtor Ventech International's director, located at 12445B Park Shadow, Houston, Texas 77058.

15.      Defendant Johnny Virgin was an officer of Ventech and Ventech International. He may be served at 2128 Pebble Beach Dr., League City, TX 77573, or wherever he may be found.

16.      Defendant Ian Anderson was an officer/director of Ventech and Ventech International.  He may be served at 48 Sugar Berry Circle, Houston, TX 77024, or wherever he may be found.

17.      Doe Defendants 1-10 include other officers and directors of Ventech and Ventech International.  Plaintiff will amend its pleadings should discovery reveal any other directors or officers have liability arising from or related to any of the claims set forth below.

**BACKGROUND**

18.     Ventech would occasionally accept valuable equipment in lieu of cash payments from financially distressed customers.

19.     In lieu of cash payments from one financially distressed customer, PSI, Ventech accepted a pre-owned oil crude & vacuum distillation unit known as "Ark City" and related equipment in accord and satisfaction for due and outstanding accounts receivable totaling $8,000,000.  In a letter dated August 31, 2007, Ventech wrote to its customer:

> We cannot survive non-payment / late payments of $8MM, including the invoices I'll send to PSI today. We want to still be in business to serve PSI when the project restarts, but if PSI does not / cannot pay, we may not be here to assist.
>
> We are searching for solutions to the problem. We hope the Ark City CDU/VDU can be sold relatively quickly and could generate $4MM, possible [sic] more. We also hope the Cat Poly could [sell] for $1MM, and one T/G for $1.5MM. We are searching for buyers.

20.     Ventech engaged Viewpoint Energy, LLC to determine the fair market value of Ark City so that it could accurately book the value of the asset on its audited financial statements. Viewpoint Energy, LLC's appraisal expertise included the valuation of oil-and-gas plants and equipment for financial reporting purposes, as this excerpt from its website attests:

> Viewpoint Energy's diverse range of skills including a broad knowledge of the industry, access to; manufacturers  disposal markets and implications of exchange rates and other economic indicators make Viewpoint Energy, well qualified to give you accurate and timely plant and equipment valuations.

21.     On March 11, 2013, Viewpoint released its valuation report and analysis that determined Ark City's fair-market value to be $8,973,550 – more than doubling Ventech's own estimation of Ark City's fair-market value.

| Equipment | Cost New Less Total Physical Deterioration |
|---|---|
| Air Coolers | $1,915,850 |
| Blowers & Fans | $9,550 |
| Centrifugal Pumps | $1,083,300 |
| Flares | $10,150 |
| Furnaces | $3,123,350 |
| Horizontal Vessels | $56,500 |
| Miscellaneous | $18,550 |
| Packed Columns | $488,500 |
| Shell & Tube Exchangers | $1,075,700 |
| Trayed Columns | $1,184,900 |
| Vertical Vessels | $7,200 |
| Total | $8,973,550 |

22.     On March 28, 2016, Viewpoint updated its report and determined Ark City's fair-market value to be $5,082,877 as reflected in the following chart prepared by Viewpoint:

| Equipment | Cost New Less Total Physical Deterioration |
|---|---|
| Air Coolers | $ 1,089,155 |
| Blowers & Fans | $ 4,192 |
| Centrifugal Pumps | $ 629,353 |
| Flares | $ 5,781 |
| Furnaces | $ 1,758,121 |
| Horizontal Vessels | $ 31,799 |
| Miscellaneous | $ 9,998 |
| Packed Columns | $ 275,699 |
| Shell & Tube Exchangers | $ 605,847 |
| Trayed Columns | $ 669,307 |
| Vertical Vessels | $ 3,625 |
| Total | $ 5,082,877 |

23.     Independent auditors at Doeren Mayhew reviewed Viewpoint's Ark City valuation report.

24.     On June 6, 2016, Doeren Mayhew auditors issued an independent auditor's report which incorporated Viewpoint's fair-market-value determination in the audited financial statements. In addition, independent auditors at Doeren Mayhew identified a separate reactor (the "Velocy Reactor") as an "asset" that Ventech valued at $3,577,002.  Together with Ark City, Doeren Mayhew accepted the value of these other assets at $8,659,879.

| | | |
|---|---|---|
| Reactor: | 3,577,002 | |
| Ark City: | 5,082,877 | G-03.a pg |
| | 8,659,879 | |

25.     Regarding Ark City, Doeren Mayhew accepted the stated valuation in its 2016 independent report. The Doeren Mayhew working papers for the audit describe the assets and valuation in some detail:

**Other Assets Equipment**

| | | |
|---|---|---|
| Reactor: | 3,577,002 | |
| Tower & Vac unit: | 7,945,000 | |
| Impairment | -2,862,123 | See AJE #2 VEI |
| Total: | 8,659,879 | GL |

**Current Year Findings:**

Ark City was found to still be on the company's yard. The appraisal performed March 2016 valued the tower and vac unit at $5,082,877. The cost of equipment on books is $7,945,000, so there has been impairment of $2,862,123. See AJE #2 in VEI TB.

The impairment is current year impairment as the equipment appraised for significantly more in the PY. Per discussion with the appraiser the impairment was based 20% on the deterioration of the equipment and 80% on market conditions.

A reactor was added in the current year. The reactor was first thought to be a short term asset so was reclassified to inventory in 2013. Per discussion with David Ledoux the project has been delayed, and the reactor will not be used until sometime in 2016. Raquel moved the reactor out of inventory and into long term asset on 3/31/2014. Management does not believe the Reactor to be impaired as they were purchased in 2013 and were new technology. Per discussion with the client, an appraisal is not practical as there is not any comparable technology to form the basis of an appraisal. DM will obtain the client's written representation related to the lack of impairment on the reactor unit.

26.     Notably, Doeren Mayhew confirmed that Ark City was valued the year prior (FY 2014) at $7,945,000 and spoke with the appraiser, who confirmed that Ark City depreciated $2,862,123 due to market conditions in FY 2015.  Ventech's 2014 tax returns reflect Viewpoint's appraisal of Ark City as $7,945,000 for FY 2014:

```
VENTECH ENGINEERS, LP                               90-0900943
FORM 1065, SUPPORTING SCHEDULES
==================================================================
SCHEDULE L - LINE 6 - OTHER CURRENT ASSETS     BEGINNING       ENDING
  ================================            -----------    -----------
DIVIDEND RECEIVABLE                             2,435,910.    16,367,813.
OTHER RECEIVABLES                               2,688,394.     6,118,883.
OTHER CURRENT ASSETS                              177,311.       106,740.
PREPAID EXPENSES                                  735,745.       670,314.
SUPPLIES                                        3,577,002.          NONE
EQUIPMENT                                       7,945,000.    11,522,002.
ESCROW ACCOUNT                                       NONE      2,006,025.
                                               -----------    -----------
   TOTAL OTHER CURRENT ASSETS                  17,559,362.    36,791,777.
                                               ===========    ===========
```

27.     Consistent with the FY 2015 valuation, Defendant Bill Stanley signed the 2015 tax returns for Ventech on August 8, 2016, listing $8,659,879 as the value of other equipment assets on Schedule L, Line 6 of Form 1065, which is the sum of Ark City valuation and the valuation of the Velocys Reactor, as confirmed by the independent auditors at Doeren Mayhew.

28.     In addition to submitting tax returns that reflected the appraised value of Ark City, Ventech submitted financial statements to its secured lender Bank of America, N.A. ("Bank of America") that reflected Viewpoint's appraised value of Ark City and the value of the Velocys Reactor. Kefalari Mason, the chief financial officer for Ventech and Ventech International, signed those compliance certificates:

> I certify to Lender, in my capacity as a Responsible Officer and not individually, that I am a Responsible Officer of the applicable undersigned Borrower on the date hereof and that:
>
> 1.  The financial statements attached to this Compliance Certificate were prepared in accordance with GAAP and present fairly, in all material respects, the financial position of Borrower at the dates indicated and the statements of operations of Borrower for the periods indicated (the "*Subject Period*")
>
> 2.  During the Subject Period, no Default has occurred which has not been cured or waived (except for any Defaults described on the attached Schedule 1).
>
> 3.  Evidence of compliance by Borrower with the financial covenants set out in *Section 10* of the Credit Agreement as of the last day of the Subject Period is set out on the calculation work sheet attached as *Schedule 2.*

29.     On Schedule 2 of Ventech's compliance certificate, Ventech lists the value of the other equipment as $8,659,879, the total value of Ark City and Velocys Reactor:

**VENTECH L.P. AND SUBSIDIARIES**
**Consolidated Balance Sheets**

| | 12/31/15 | 03/31/16 | 06/30/16 | 09/30/16 |
|---|---|---|---|---|
| **Assets** | | | | |
| Current assets | | | | |
| Cash | 17,974,823 | 14,063,551 | 8,451,781 | 3,126,518 |
| Account receivable | 32,540,752 | 33,553,320 | 33,825,913 | 17,945,338 |
| Prepaid and other current assets | 2,462,940 | 2,450,849 | 2,288,828 | 1,249,885 |
| Other receivable | 2,167,582 | 1,650,907 | 1,795,389 | 1,733,243 |
| Total Current Asset | 55,146,096 | 51,718,627 | 46,361,911 | 24,054,984 |
| Property and equipment | 10,957,072 | 10,487,042 | 9,949,188 | 8,188,380 |
| Other assets | | | | |
| Other equipment | 8,659,879 | 8,659,879 | 8,659,879 | 8,659,879 |
| Other assets | 287,211 | 308,082 | 292,132 | 302,132 |
| Intangible assets, net | - | | | |
| Total assets | 75,050,259 | 71,173,630 | 65,263,110 | 41,205,375 |

30.     Accordingly, as late as September 30, 2016, Ventech claimed that it owned Ark City valued at $5,082,877 and a Velocys Reactor valued at $3,577,002 (or $8,659,879 total).

31.     Defendants' actions and negligence, each individually and together in concert, however, caused the $8,659,879 in assets to be removed from the company for less than reasonably equivalent value to the detriment of Ventech and Ventech International.

32.     On information and belief, Defendant Johnny Virgin at the direction of Defendant Ian Anderson marketed the sale of Ark City for approximately one week.

33.     On April 27, 2017, Ventech International sold Ark City to Defendant Five Star for $32,723, nowhere close to the $5,082,877 valuation that Ventech submitted to its independent auditors, the IRS, and its secured lender:

| State of Texas County: Harris | $157,723.00 USD |
|---|---|

Bill of Sale of Personal Property

IN CONSIDERATION OF the sum of $157,723.00 USD, plus any applicable sales taxes, paid by Business Check, the receipt of which consideration is acknowledged, Ventech Engineers International LLC of 100 Pasadena Blvd., Pasadena, TX 77506 (the 'Seller'), SELLS AND DELIVERS to Five Star Properties Broadway LLC of PO Box 1042, Seabrook, TX 77586 (the 'Purchaser'), the following personal property (the 'Property'):
Fab Shop:
63 welders, Tool room, misc.
$50,000.00
Assembly shop:
Manipulators, turning rolls, positioners, Iron worker, Oxy / acetyl carts 4-small welders, misc.
$75,000.00
Ark City - See Attached Map
$32,723.00.

34.     Defendant Bill Stanley was a director of Ventech and Ventech International as well as the President of Defendant Five Star.  Defendant Bill Stanley's sons, Defendants Kreg and Kevin Stanley, were also directors of Ventech and Ventech International.  Defendant Kreg Stanley, actually signed the Bill of Sale on behalf of the purchaser, Defendant Five Star:

SIGNED, SEALED, AND DELIVERED
this 27th day of April, 2017.

Five Star Properties Broadway LLC
(Purchaser)

35.     On information and belief, Defendant Johnny Virgin, an officer of Ventech International, ran the auction process that resulted in the grossly undervalued sale of Ark City.  As a Ventech International officer and procurement specialist, Defendant Johnny Virgin should have exercised more care in marketing the asset and selling the asset at a price that reflected Ark City's value, as confirmed by expert appraisers, independent auditors, and as represented by Ventech International to the IRS in tax returns and to Ventech's secured lender in compliance certificates.  On information and belief, Defendant Ian Anderson, an officer/director of Ventech International, directed and oversaw Johnny Virgin's actions in the auction process.

36.     Ventech International did not obtain a lien release from it secured lender Bank of America in connection with the transfer of its interest in Ark City to Defendant Five Star.

37.     On information and belief, on the date of the transfer of Ark City, Ventech International (i) was insolvent, or became insolvent as a result thereof, (ii) was engaged or was about to engage in a business or transaction for which the remaining assets were unreasonably small in relation to its business or transaction; and/or (iii) intended to incur, or believed or reasonably should have believed that it was incurring, debts beyond its ability to repay them.

38.     Less than one month later, on May 26, 2017 (the "Petition Date"), Ventech filed its voluntary petition for relief under chapter 7 of the Bankruptcy Code. On its SOFA, Ventech misreported the sale of Ark City oil-and-gas rig as a sale of fabrication shop assets rather than the sale of oil-and-gas equipment worth more than $5,000,000:

Ventech Engineers International LLC
Attachment 4.1 - Form 207 Part 2, Question 4
Payments/Transfers to Insiders 1 Year Before Petition

| Name | Address | City | State | Zip | Country | Sum of Line Item Amount | Date |
|------|---------|------|-------|-----|---------|------------------------|------|
| OLIVER PUSKAC | 9014 Elizabeth Road | Houston | TX | 77055 | USA | 9,671.45 | 12/13/16 and 2/28/17 |
| FIVE STAR PROPERTIES BROADWAY | P.O. Box 1042 | Seabrook | TX | 77586 | USA | 243,334.00 | 2/1/17 and 3/1/17 |
| VENTECH ENGINEERS LP | 100 Pasadena Blvd. | Pasadena | TX | 77506 | USA | 152,382.00 | 5/31/16 to 5/4/17 |
| VENTECH INFORMATION SYSTEMS | P.O. Box 1042 | Seabrook | TX | 77586 | USA | 463,445.43 | 5/24/16 to 4/26/17 |
| VENTECH INTL. SERVICES PHILS | 23Flr. Insular Life Corporate Center, Filinvest Corporate City | Alabang, Muntinlupa City 1770 | | | Philippines | 5,298,362.11 | 5/11/16 to 4/26/17 |
| Grand Total | | | | | | 6,167,194.99 | |

| Name | Address | City | State | Zip | Country | Item / Description | Date |
|------|---------|------|-------|-----|---------|-------------------|------|
| Scott McClary | 2903 Bay Isle | Houston | TX | 77059 | USA | 2010 GMC Sierra K15 License: BM30287 VIN: 3GTRXXE28AG249700 Transferred title to Scott McClary April 2017, compensation reported on W2 | Apr-17 |
| FIVE STAR PROPERTIES BROADWAY | P.O. Box 1042 | Seabrook | TX | 77586 | | Sale of fabrication shop assets to Five Star Properties for $157,723.00 | 4/27/2017 |

39.     Regarding the Velocys reactor, Defendants actions and negligence (individually and together in concert) caused Ventech and Ventech's creditors to lose the value of an asset worth $3,577,002.

40.     On March 28, 2014, Lorrie Campbell-Debaylo wrote to Defendant Kreg Stanley and Laura Hotard seeking an explanation as to why Ventech carried the Velocys Reactor valued at $3,577,002 when apparently there were questions regarding its location and whether Ventech actually owned the reactor:

| From: | Lorrie Campbell-Debaylo |
|---|---|
| Sent: | Friday, March 28, 2014 8:52 AM CDT |
| To: | Kreg Stanley; Laura Hotard |
| CC: | David Ledoux |
| Subject: | RE: Velocys reactor |

I need someone to explain to me what we purchased from Velocys for $3,577,002?  I have an asset on my books and now I am hearing that we don't own it.

41.     On information and belief, Ventech did not have possession of the Velecoys Reactor; instead, Ventech held a valuable contract interest in the fabrication of the Velocys Reactor.   Ventech kept the interest in the Velocys Reactor as an asset on its books for years.  As late as September 30, 2016, Ventech showed the value of its interest in the Velocys Reactor as $3,577,002 in its compliance certificate.

42.     On information and belief, sometime between September 30, 2016 and December 31, 2016, when Ventech was struggling financially, Ventech transferred its interest in the Velocy Reactor, valued at $3,577,002, to Velocys.  Velocys' own financial disclosures provide:

**Other income**
In 2016 the Company recognised £2,496,000 as Other income. This relates to non-refundable amounts from Ventech previously recorded in deferred income in respect of the cancellation of a contract with Ventech for reactors. The judgment to recognise this income is based on an assessment of the contractual position, taking into account both the terms of the original contract and subsequent amendments. The Company believes that all obligations under this contract have been fulfilled and therefore that it is probable that the economic benefits associated with the transaction have flowed to the Company and that recognition of the related income is appropriate. This is a binary judgement, and, therefore, the Company has recognised revenue at the point at which the probability criterion was met.

43.     On information and belief, the transfer of the interest in the Velocys Reactor was to the benefit of Envia Energy, LLC ("Envia").   Velocys own disclosures explain:

The EPC for the ENVIA project, Ventech
Engineers International, LLC, entered
bankruptcy proceedings in April 2017,
during the commissioning of the plant.
(VPI LF-GTL, who is a part owner of
ENVIA Energy LLC, was not subject to
the bankruptcy proceedings). During
this period, Velocys was called upon to
leverage its experienced team of technical
advisors to support the ENVIA team on
site, which allowed work to proceed close
to the original plan, as well as supporting
the delivery of the subsequent operational
milestones.

44.     Ventech International served as the Engineering, Procurement, and Construction (EPC) contractor for Envia.  Envia is a joint venture with Velocys in which certain Stanley investment vehicles owned an interest.  For example, VPI LF-GTL, LLC and Ventech Project Investments, LP owned 180,000 Series A Preferred Units in ENVIA Energy, LLC; 269,855 Series C Preferred Units, and 269,855 Series C-1 Preferred Units in ENVIA Energy, LLC.  Defendant Kevin Stanley, other members of the Stanley family, and Cooper Investment Partners (a private equity investor of Ventech) served as investors or directors of Envia or had a financial interest in Envia.  Ian Anderson, Ventech's former CEO, explained the relationship:

| | |
|---|---|
| From: | Ian Anderson |
| Sent: | Thursday, January 7, 2016 2:25 PM CST |
| To: | Precely Pabrua |
| CC: | Jeffrey Hall; Kevin Stanley; George Armistead; Brad Vaughn |
| Subject: | ENVIA |

Precely,

        Kevin Stanley is a member of the ENVIA Board of Directors since both his family and the Coopers have invested in an ownership stake in ENVIA.  As ENVIA looks at other potential investments, in slightly larger GTL plants, Kevin wants to be prepared to defend any estimate prepared by Ventech. In order to enable him to do this, could you list the major categories with approximate values on our current project with ENVIA that we had missed or made a mistake in our original estimate. For example I know that we did not have the right quantity of pipe in the original estimate and we had underestimated construction costs.
This is a high level exercise and could you respond by Wednesday next week.
Thanks

45.     On information and belief, on the date of the transfer of its interest in the Velocys Reactor, Ventech (i) was insolvent, or became insolvent as a result thereof, (ii) was engaged or was about to engage in a business or transaction for which the remaining assets were unreasonably small

in relation to its business or transaction; and/or (iii) intended to incur, or believed or reasonably should have believed that it was incurring, debts beyond its ability to repay them.

## COUNT I: AVOIDANCE OF ARK CITY TRANSFER AGAINST TRANSFEREE DEFENDANT FIVE STAR
### 11 U.S.C. § 548(a)(1)(A)

46.    The Trustee re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

47.    The transfer and any agreement by a debtor to make or allow such transfer made within two years of the Petition Date are avoidable as fraudulent transfers under section 548 of the Bankruptcy Code.

48.    Under section 548(a)(1)(A) of the Bankruptcy Code, an actual fraudulent transfer is made when there is an actual intent to hinder, delay, or defraud any entity to which the debtor was or became indebted.  Ventech International intended to hinder, delay or defraud its creditors by transferring its interest in Ark City, which had been appraised at $5,082,877 for $32,723.00, to Defendant Five Star where:

   a.   The transfer occurred less than one month prior to Petition Date;

   b.   Defendant Bill Stanley, as Ventech and Ventech International's director and statutory insider, signed Ventech's tax returns, less than nine months prior to the Petition Date, reflecting Ark City's appraised fair market value of $5,082,877;

   c.   Ventech International represented Ark City's fair market value as $5,082,877, as late as September 30, 2016, in compliance certificates to Bank of America to support representations of compliance with its loan covenants;

   d.   Defendant Kreg Stanley, as agent for Defendant Five Star, signed the Bill of Sale that effectuated the transfer of Ventech International's interest in Ark City to Defendant Five Star less than one month prior to the Petition Date;

e.   Ventech International did not obtain a lien release from it secured lender Bank of America in connection with the transfer of its interest in Ark City to Defendant Five Star; and

f.   Ventech International hindered the Trustee's identification of the transfer of its interest in Ark City by misrepresenting the sale of Ark City as part of the sale of fabrication shop equipment and omitting material details of the transfer on its SOFA.

49.   The Trustee is entitled to judgment avoiding the transfer of Ark City under section 548(a)(1)(A) of the Bankruptcy Code.

### COUNT II: AVOIDANCE OF ARK CITY TRANSFER AGAINST TRANSFEREE DEFENDANT FIVE STAR
### 11 U.S.C. § 548(a)(1)(B)

50.   The Trustee re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

51.   Ventech International's transfer of Ark City to Defendant Five Star constitutes a constructive fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code.  Specifically, Ventech International received less than reasonably equivalent value in exchange for the transfer of its interest in Ark City by receiving only $32,723 in exchange for Ark City that had an appraised value of $5,082,877.

52.   On the date of the transfer, Ventech International was insolvent, or became insolvent as a result thereof; was engaged or was about to engage in business in which its property after the transfer was unreasonably small capital; and/or intended to incur or believed it would incur debts that it would be unable to repay.

53.   The Trustee is entitled to judgment avoiding the transfer of Ark City under section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT III: AVOIDANCE OF ARK CITY TRANSFER AGAINST TRANSFEREE
### DEFENDANT FIVE STAR
**11 U.S.C. § 544(b) and Tex. Bus. & Com. Code § 24.005(1)**

54.     The Trustee re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

55.     Pursuant to section 544 of the Bankruptcy Code, the Trustee brings this claim on behalf of the estate and its creditors under section 24.005(1) of the Texas Business and Commerce Code, Tex. Bus. & Com. Code §§ 24.001-24.0012 (the "Texas Uniform Fraudulent Transfer Act" or "TUFTA").

56.     Under section 24.005(1) of TUFTA, an actual fraudulent transfer is made when there is an actual intent to hinder, delay, or defraud any creditor of debtor.  Ventech International intended to hinder, delay or defraud its creditors by transferring its interest in Ark City, which had been appraised at $5,082,877, to Defendant Five Star where:

a.     The transfer occurred less than one month prior to the Petition Date;

b.     Defendant Bill Stanley, as Ventech and Ventech International's director and statutory insider, signed Ventech's tax returns, less than nine months prior to the Petition Date, reflecting Ark City's appraised fair market value of $5,082,877;

c.     Ventech International represented Ark City's fair market value as $5,082,877, as late as September 30, 2016, in compliance certificates to Bank of America to support representations of compliance with its loan covenants;

d.     Defendant Kreg Stanley, as agent for Defendant Five Star, signed the Bill of Sale that effectuated the transfer of Ventech International's interest in Ark City to Defendant Five Star less than one month prior to the Petition Date;

e.     Ventech International did not obtain a lien release from it secured lender Bank of America in connection with the transfer of its interest in Ark City to Defendant Five Star; and

15

f.     Ventech International hindered the Trustee's identification of the transfer of its interest in Ark City by misrepresenting the sale of Ark City as part of the sale of fabrication shop equipment and omitting material details of the transfer on its SOFA.

57.     A creditor exists for whom the Trustee can act whose claim arose before or within a reasonable time after the occurrence of the transfer.  TEX. BUS. & COM. CODE § 24.006(a). Ventech International's Schedule C lists numerous creditors who held undisputed, non-contingent, and liquidated unsecured claims as of the Petition Date.

58.     The Trustee is entitled to recover the value of the transfer from Defendant Five Star along with pre- and post-judgment interest.  TEX. BUS. & COM. CODE § 24.008.

**COUNT IV: AVOIDANCE OF ARK CITY TRANSFER AGAINST TRANSFEREE**
**DEFENDANT FIVE STAR**
**11 U.S.C. § 544(b) and Tex. Bus. & Com. Code § 24.005(2)**

59.     The Trustee re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

60.     Ventech International's transfer of Ark City to Defendant Five Star constitutes a constructive fraudulent transfer under section 24.005(2) of TUFTA.

61.     The transfer of Ark City to Defendant Five Star was made for less than reasonably equivalent value as Ventech International received only $32,723 in exchange for Ark City that had an appraised value of $5,082,877.

62.     On the date of the transfer, Ventech International (i) was engaged or was about to engage in a business or transaction for which the remaining assets were unreasonably small in relation to its business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that it was incurring, debts beyond its ability to repay them.

63.     A creditor exists for whom the Trustee can act whose claim arose before or within a reasonable time after the occurrence of the transfer.  TEX. BUS. & COM. CODE § 24.006(a). Ventech

International's Schedule C lists numerous creditors who held undisputed, non-contingent, and liquidated unsecured claims as of the Petition Date.

64.     The Trustee is entitled to recover the value of the transfer from Defendant Five Star along with pre- and post-judgment interest.  TEX. BUS. & COM. CODE § 24.008.

**COUNT V: AVOIDANCE OF REACTOR TRANSFER AGAINST
TRANSFEREE DEFENDANT VELOCYS**
**11 U.S.C. § 548(a)(1)(A)**

65.     The Trustee re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

66.     The transfer and any agreement by a debtor to make or allow such transfer made within two years of the Petition Date are avoidable as fraudulent transfers under section 548 of the Bankruptcy Code.

67.     Under section 548(a)(1)(A) of the Bankruptcy Code, an actual fraudulent transfer is made when there is an actual intent to hinder, delay, or defraud any entity to which the debtor was or became indebted.  Ventech intended to hinder, delay or defraud its creditors by transferring its interest in the Velocys Reactor to Defendant Velocys where:

  a.     The transfer occurred less than nine months prior to its Petition Date;

  b.     As late as September 30, 2016, Ventech showed the value of its interest in the Velocys Reactor as $3,577,002 in its compliance certificate; and

  c.     The transfer was to Velocys for the benefit of Envia in which the Stanley Defendants, insiders of Ventech, had an economic interest.

68.     The Trustee is entitled to judgment avoiding the transfer of Ventech's interest in the Velocys Reactor under section 548(a)(1)(A) of the Bankruptcy Code.

## COUNTS VI: AVOIDANCE OF REACTOR TRANSFER AGAINST
## TRANSFEREE DEFENDANT VELOCYS
### 11 U.S.C. § 548(a)(1)(B)

69. The Trustee re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

70. Ventech's transfer of its interest in the Velocys Reactor to Defendant Velocys constitutes a constructive fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code. Specifically, Ventech received less than reasonably equivalent value in exchange for the transfer its interest in the Velocys Reactor to Defendant Velocys because Ventech received nothing of value in exchange for this transfer and Velocys booked revenue of $3,577,002 as a result of the transfer. Velocys recognized that amount as revenue in 2016 and used it to benefit Envia in which the Stanley Defendants, insiders of Ventech, had an economic interest.

71. On the dates of the transfer, the Ventech was insolvent, or became insolvent as a result thereof; was engaged or was about to engage in business in which his property after the transfer was unreasonably small capital; and/or intended to incur or believed it would incur debts that it would be unable to repay.

72. The Trustee is entitled to judgment avoiding the transfer under section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT VII: AVOIDANCE OF REACTOR TRANSFER AGAINST
## TRANSFEREE DEFENDANT VELOCYS
### 11 U.S.C. § 544(b) and Tex. Bus. & Com. Code § 24.005(1)

73. The Trustee re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

74. Pursuant to section 544 of the Bankruptcy Code, the Trustee brings this claim on behalf of the estate and its creditors under section 24.005(1) of TUFTA.

75.     Under section 24.005(1) of TUFTA, an actual fraudulent transfer is made when there is an actual intent to hinder, delay, or defraud any creditor of debtor.  Ventech intended to hinder, delay or defraud its creditors by transferring its interest in the Velocy Reactor, which had been appraised at $5,082,877, to Defendant Velocys where:

a.     The transfer occurred less than nine months prior to its Petition Date when Ventech was insolvent;

b.     As late as September 30, 2016, Ventech showed the value of its interest in the Velocys Reactor as $3,577,002 in its compliance certificate; and

c.     The transfer was to Velocys for the benefit of Envia in which the Stanleys held a financial interest.

76.     A creditor exists for whom the Trustee can act whose claim arose before or within a reasonable time after the occurrence of the transfer.  Tex. Bus. & Com. Code § 24.006(a). Ventech's Schedule C lists numerous creditors who held undisputed, non-contingent, and liquidated unsecured claims as of the Petition Date.

77.     The Trustee is entitled to recover the value of the transfer from Defendant Five Star along with pre- and post-judgment interest.  Tex. Bus. & Com. Code § 24.008.

## COUNT VIII: AVOIDANCE OF REACTOR TRANSFER AGAINST TRANSFEREE DEFENDANT VELOCYS
### 11 U.S.C. § 544(b) and Tex. Bus. & Com. Code § 24.005(2)

78.     The Trustee re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

79.     Ventech's transfer of its interest in the Velocys Reactor constitutes a constructive fraudulent transfer under section 24.005(2) of TUFTA.

80.     The transfer to Defendant Velocys was made for less than reasonably equivalent value because Ventech received nothing of value in exchange for this transfer and Velocys booked revenue of $3,577,002 as a result of the transfer.  Velocys recognized that amount as revenue in 2016 and used it to benefit Envia in which the Stanley Defendants, insiders of Ventech, had an economic interest.

81.     On the date of the transfer, Ventech (i) was engaged or was about to engage in a business or transaction for which the remaining assets were unreasonably small in relation to its business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that it was incurring, debts beyond its ability to repay them.

82.     A creditor exists for whom the Trustee can act whose claim arose before or within a reasonable time after the occurrence of the transfer.  TEX. BUS. & COM. CODE § 24.006(a). Ventech's Schedule C lists numerous creditors who held undisputed, non-contingent, and liquidated unsecured claims as of the Petition Date.

83.     The Trustee is entitled to recover the value of the transfer from Defendant Velocys along with pre- and post-judgment interest.  TEX. BUS. & COM. CODE § 24.008.

### COUNT IX: RECOVERY OF TRANSFERS AGAINST
### TRANSFEREE DEFENDANTS FIVE STAR AND VELOCYS
### 11   U.S.C. §§ 544(B), 550(a)(1), and Tex. Bus. & Com. Code § 24.009

84.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

85.     Under section 550(a) of the Bankruptcy Code, the Trustee may recover the transfer from "the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

86.     Defendants Five Star and Velocys are either the initial transferee, the immediate transfer of the initial transferee, or the beneficiary of the transfers outlined in Counts I-VIII. Consequently, the Trustee is entitled to a judgment avoiding the transfer and awarding the Trustee a

money judgment in the amount of the transfer plus pre- and post-judgment interest from the Defendants.

### COUNT X: BREACH OF FIDUCIARY DUTIES AGAINST DEFENDANTS
### KREG STANLEY, KEVIN STANLEY & BILL STANLEY

87.     Plaintiff realleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

88.     Defendants Kreg, Kevin, and Bill Stanley were directors and statutory insiders of Ventech and Ventech International and therefore owed fiduciary duties to Ventech and Ventech International including a duty of care and a duty of loyalty.

89.     Defendants Kreg Stanley, Kevin Stanley, and Bill Stanley breached their fiduciary duties of care and loyalty by taking actions in furtherance, and filing to take actions to prevent, a self-dealing transaction in which Ventech International transferred Ark City, an asset appraised at $5,082,877, to Defendant Five Star for a mere $32,723.00.   Defendants Kreg and Bill Stanley participated in this self-dealing transaction for their own personal benefit and to the economic detriment of Ventech International.

90.     Defendant Kreg Stanley and Kevin Stanley breached their fiduciary duties of care and of loyalty owed to Ventech by allowing Ventech's interest in the Velocy Reactor, an interest valued at $3,557,002, to be transferred to Velocys.   The transfer was for their own personal benefit and to the economic detriment of Ventech because the transfer of the Velocys Reactors was for the benefit of Envia in which Kreg Stanley and Kevin Stanley held a financial interest together with Velocys.

### COUNT XI: BREACH OF FIDUCIARY DUTY AGAINST
### JOHNNY VIRGIN AND IAN ANDERSON

91.     Plaintiff realleges and fully incorporates the allegations in the preceding paragraphs as fully set forth herein.

92.     Defendants Johnny Virgin and Ian Anderson were officers and/or directors of Ventech and Ventech International.  Johnny Virgin worked as head of procurement and Ian Anderson oversaw Johnny Virgin.  As officers and/or directors of Ventech and Ventech International, Defendants Johnny Virgin and Ian Anderson owed fiduciary duties to Ventech and Ventech International.

93.     As head of procurement and an officer of Ventech and Ventech International, Defendant Johnny Virgin knew or should have known that Ark City had an appraised value of $5,082,877.  As the chief executive officer, Ian Anderson knew or should have known that Ark City had an appraised value of $5,082,877.

94.     Defendant Johnny Virgin and Ian Anderson breached their fiduciary duties when they failed to use the care requisite of their positions when they ran an auction on Ark City that resulted in its grossly undervalued sale to Defendant Five Star.

95.      Defendant Johnny Virgin, at the direction of Defendant Ian Anderson, marketed the sale of Ark City for approximately one week.  This marketing effort is wholly inadequate for an asset like Ark City and Johnny Virgin and Ian Anderson knew or should have known that such a short marking period would be insufficient to realize the value Ark City.

96.     By failing to properly market and auction the sale of Ark City, Defendant Johnny Virgin and Defendant Ian Anderson breached the duties they owed to Ventech International and caused damage to Ventech International in the amount of $5,050,154, the difference in the appraised value of Ark City and the amount realized from the sale.

## COUNT XII:
## COUNT XIV: ATTORNEYS' FEES

97.     The Trustee requests that the Court award him all of his reasonable attorneys' fees, expenses, and costs of court incurred in connection with this adversary proceeding against Defendants as authorized under section 24.013 of TUFTA.

22

## PRAYER

WHEREFORE, the Trustee respectfully requests that the Court enter judgment for, or make findings of fact and conclusions of law in support of, the following relief:

a. Enter an order of judgment avoiding the transfers of the interests in Ark City and the Velocys Reactor under section 548(a)(1)(A) and (B) of the Bankruptcy Code;

b. Enter an order of judgment avoiding the transfers of the interests in Ark City and the Velocys Reactor under section 544(b) of the Bankruptcy Code and TUFTA.

c. Enter an order of judgment for recovery of the transfers of the interests in Ark City and the Velocys Reactor under sections 544(B) and 550(a) of the Bankruptcy Code and section 24.009 of TUFTA.

d. Enter an order of judgment determining that Defendants Kreg Stanley, Kevin Stanley, Bill Stanley, Johnny Virgin, and Ian Anderson breached their fiduciary duties and awarding damages in connection therewith.

e. Exemplary damages;

f. Attorneys' fees and costs; and

g. All other relief to which the Plaintiff is entitled and is just and proper.

Dated: April 2, 2020

Respectfully submitted,

DIAMOND MCCARTHY LLP

By: _/s/ Charls M. Rubio_
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Brian Raymond Hogue
TBA No. 24094725
bhogue@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, Texas 77010
(713) 333-5100 Telephone
(713) 333-5199 Facsimile

*Counsel to Chapter 7 Trustee Rodney D. Tow*