# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| VENTECH ENGINEERS LP et al., | § | Case No.  17-33203 |
| | § | |
| Debtors, | § | Jointly Administered |
| | § | |
| | § | |
| RODNEY TOW, CHAPTER 7 TRUSTEE | § | Adversary No. 20-03075 |
| FOR THE ESTATES OF VENTECH | § | |
| ENGINEERS INTERNATIONAL LLC & | § | |
| VENTECH ENGINEERS, LP | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| FIVE STAR PROPERTIES BROADWAY | § | |
| LLC, VELOCYS, INC., KREG STANLEY, | § | |
| KEVIN STANLEY, BILL STANLEY, | § | |
| JOHNNY VIRGIN, IAN ANDERSON & | § | |
| DOES 1-10 | § | |
| | § | |
| Defendants | § | |

# FIVE STAR PROPERTIES AND THE INDIVIDUAL DEFENDANTS'
## <u>PARTIAL MOTION TO DISMISS THE COMPLAINT</u>

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.  Represented parties should act through their attorney.

# TABLE OF CONTENTS

Introduction ............................................................................................................................1

Relevant Factual Information ...............................................................................................2

Legal Standard ......................................................................................................................4

Argument ..............................................................................................................................6

I.   The Complaint Fails to State a Claim for Actual Fraudulent Transfer Against Five Star
     Properties.  (Counts I and III) ......................................................................................6

II.  The Complaint Fails to State a Claim for Breach of Fiduciary Duty Against Johnny Virgin
     and Ian Anderson.  (Count XI) .....................................................................................9

     A.  Virgin's and Anderson's Actions are Protected by the Business Judgment Rule. .............9

     B.  Ventech's Articles of Incorporation Immunize Anderson from Any Duty of Care
         Liability ..................................................................................................................11

III. The Complaint Fails to State a Claim for Breach of Fiduciary Duty Against Kevin Stanley
     and Kreg Stanley Related to the Velocys Reactors.  (Count X) ...............................12

     A.  The Velocys-Related Breach of Fiduciary Duty Claim Is Unclear and Fails to
         Meet Rule 8's Pleading Requirements. ...............................................................13

     B.  The Velocys-Related Breach of Fiduciary Duty Claim Does Not Meet Rule 9(b)'s
         Heightened Pleading Requirements. ....................................................................17

     C.  The Velocys-Related Duty of Care Violation Is Exculpated by the Articles of
         Incorporation. .......................................................................................................19

IV. The Complaint Fails to State a Claim for a Duty of Care Violation Against the Stanleys
     Related to the Ark City Equipment.  (Count X) .......................................................19

Conclusion ..........................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................5, 15, 16

*Matter of ATP Oil & Gas Corp.*,
   711 Fed. App'x 216 (5th Cir. 2017) ...............................................................................1, 10

*Baker v. Great N. Energy, Inc.*,
   2015 WL 11120878 (N.D. Tex. June 18, 2015) ...................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... *passim*

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
   343 F.3d 719 (5th Cir. 2003) .........................................................................................17

*BFP v. Resolution Tr. Corp.*,
   511 U.S. 531 (1994) ....................................................................................................7

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ...............................................................................................9

*Buckley Family Tr. v. McCleary*,
   2020 WL 1522549 (Del. Ch. Mar. 31, 2020) .................................................................14

*In re Cornerstone Therapeutics Inc, Stockholder Litig.*,
   115 A.3d 1173 (Del. 2015) ...........................................................................................12

*Cty. of Clinton v. Warehouse at Van Buren St., Inc.*,
   496 B.R. 278 (N.D.N.Y. 2013) ......................................................................................8

*Goodman v. H.I.G. Capital, LLC*,
   491 B.R. 747 (Bankr. W.D. La. 2013) ...........................................................................6

*Hack v. Wright*,
   396 F. Supp. 3d 720 (S.D. Tex. 2019) ..........................................................................12

*Hollis v. Hill*,
   232 F.3d 460 (5th Cir. 2000) ........................................................................................5

*Howell v. Fulford and SRH Holding Co., LLC*,
   561 B.R. 810 (Bankr. N.D. Ga. 2016) ...........................................................................7

*In re Kilroy*,
   357 B.R. 411 (Bankr. S.D. Tex. 2006) ..........................................................................5

*Landon v. S & H Mktg. Grp., Inc.*,
    82 S.W.3d 666 (Tex. App.—Eastland 2002, no pet.) ........................................................19

*In re Life Partners Holdings, Inc.*,
    2015 WL 8523103 (W.D. Tex. Nov. 9, 2015) ...................................................12, 14

*McPadden v. Sidhu*,
    964 A.2d 1262 (Del. Ch. 2008)........................................................................11

*Milbank v. Sharpshooter II, Inc.*,
    559 B.R. 143 (Bankr. N.D. Tex. 2016)..............................................................8

*Mills Acquisition Co. v. Macmillan, Inc.*,
    559 A.2d 1261 (Del. 1989) ...............................................................................9

*In re NE 40 Partners, Ltd.*,
    411 B.R. 352 (Bankr. S.D. Tex. 2009) ..............................................................5

*In re NE 40 Partners, Ltd. P'ship*,
    440 B.R. 124 (Bankr. S.D. Tex. 2010) ............................................................17

*Omnicare, Inc. v. NCS Healthcare, Inc.*,
    818 A.2d 914 (Del. 2003) ...............................................................................10

*Paramount Commc'ns Inc. v. QVC Network Inc.*,
    637 A.2d 34 (Del. 1994) .................................................................................10

*RSH Liquidating Tr. v. Magnacca*,
    553 B.R. 298 (Bankr. N.D. Tex. 2016)............................................................10

*S.E.C. v. Res. Dev. Int'l, LLC*,
    487 F.3d 295 (5th Cir. 2007) ............................................................................7

*In re Schepps Food Stores, Inc.*,
    160 B.R. 792 (Bankr. S.D. Tex. 1993) ............................................................11

*Sneed v. Webre*,
    465 S.W.3d 169 (Tex. 2015)............................................................................10

*Soza v. Hill*,
    542 F.3d 1060 (5th Cir. 2008) ..........................................................................7

*Stettin v. The Dan Marino Found., Inc.*,
    483 B.R. 15 (Bankr. S.D. Fla. 2012)................................................................8

*Superior Offshore Int'l, Inc. v. Schaefer*,
    2011 WL 4007888 (S.D. Tex. Sept. 8, 2011) .................................................12

*In re Tower Air, Inc.*,
    416 F.3d 229 (3d Cir. 2005) ............................................................. 9

*Wiebe v. Benefits Mgmt. Corp.*,
    1993 WL 246096 (D. Kan. June 17, 1993) ....................................... 8

*In re Xtreme Power Inc.*,
    563 B.R. 614 (Bankr. W.D. Tex. 2016) ...................................... 10, 11

## Statutes

8 Del. C. § 141(e) ............................................................................... 14

11 U.S.C.A. § 548(a)(1)(A) .................................................................. 6

Del. Code Ann. tit. 8, § 102(b)(7) ................................................. 11, 12

Tex. Bus. Orgs. Code Ann. § 1.102 ...................................................... 5

Tex. Bus. Orgs. Code Ann. § 3.102(a) ............................................... 14

Tex. Bus. & Comm. Code § 24.0005(a)(1) ........................................... 6

## Other Authorities

Fed. R. Bankr. 7012(b)(6) ..................................................................... 4

Fed. R. Civ. P. 8(a)(2) ............................................................... *passim*

Fed. R. Civ. P. 9(b) ................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................. *passim*

Defendants Bill Stanley, Kevin Stanley, and Kreg Stanley ("the Stanleys"), Johnny Virgin and Ian Anderson (with the Stanleys, "the Individual Defendants"), and Five Star Properties Broadway LLC ("Five Star"), file this partial motion to dismiss the Complaint.  Though none of the claims have merit on the facts, this motion to dismiss challenges as inadequately pleaded and unsupported by law (1) the actual fraudulent transfer claims in Counts I and III; (2) the breach of fiduciary duty claim against Johnny Virgin and Ian Anderson in Count XI; and (3) in Count X, the duty of care claim and the Velocys-related breach of duty claim against the Stanleys.

## INTRODUCTION

The Complaint fails to meet the relevant pleading burden and fails to give Five Star and the Individual Defendants fair notice of what the claims are, on issues both large and small.  For example, the Complaint omits any information about the contract that forms the basis of the Velocys-related claims, and it either fails to allege scienter entirely or else alleges an illogical theory of scienter.  It also fails to identify the positions of people it quotes, preventing any assessment of the person's knowledge; the sources it relies on for many of its financial and accounting assertions; or even when key events happened.  "These pleading deficiencies are 'particularly striking' because the Trustee has ample access to [the company's] books and records," but nonetheless failed to include critical information.  *Matter of ATP Oil & Gas Corp.*, 711 Fed. App'x 216, 224 (5th Cir. 2017).

The majority of the claims against Five Star and the Individual Defendants fail as a matter of law.  *First*, the actual fraudulent transfer claims alleged in Counts I and III should be dismissed because the necessary element of scienter is missing.  The "badges of fraud" alleged are illusory and the Complaint fails to even identify which person or people allegedly acted with scienter.  *Second*, the breach of fiduciary duty claim against Johnny Virgin and Ian Anderson should be

1

dismissed because their actions are protected by the business judgment rule, and also because Anderson, as a director, is exculpated by Ventech's Articles of Incorporation under Delaware and Texas law. *Third,* the Velocys-related breach of fiduciary duty claim against Kevin Stanley and Kreg Stanley should be dismissed because the Complaint entirely fails to allege necessary details, such as the nature of the transfer that forms the basis of the claim or when the transfer allegedly occurred. In addition, the Trustee's theory of scienter—that the alleged transfer from one company to another actually benefited a third, entirely separate company, which *then* benefited the Stanleys—makes no sense. *Lastly*, the duty of care portion of the Ark City-related breach of fiduciary duty claim against the Stanleys should be dismissed because it is exculpated by Ventech's Articles of Incorporation. These claims should all be dismissed with prejudice because the Trustee has had access to all of Ventech's contracts, emails, and financial statements, and has had more than three years to review those materials in order to draft a complaint that meets the pleading standards, and he has still failed to do so.

The Trustee's allegations reveal a fundamental misunderstanding of Ventech's business specifically and the oil and gas industry generally. While none of the asserted claims has any merit whatsoever, this partial motion to dismiss challenges only the claims that fail to meet the basic, let alone the heightened, pleading standards required under Rule 12(b)(6).

## Relevant Factual Information[1]

Ventech was founded by Bill Stanley in 1967 as a company that specialized in remanufacturing equipment for the oil refining industry. Over the course of 50 years, Ventech grew into a successful, full-service engineering company that developed refineries in places

---

[1] This summary corrects and clarifies issues directly relevant to the claims challenged in this motion; it does not address the many incorrect statements and implications made throughout the Complaint. The information is included to help the Court make sense of the Complaint's wide-ranging and vague allegations.

ranging from North Dakota to Iraq to Siberia, with clients on all continents except Antarctica. It designed and constructed new oil refineries using a modular approach, and also reengineered and reconfigured equipment such as process units no longer in use so the units could work in other refineries, in different locations, under different environmental conditions. Like all companies in the oil industry, Ventech was subject to the boom-and-bust cycle of oil prices. When the price of oil dropped to $50 per barrel in spring 2017, there was little demand in the market for Ventech's innovative technology. It thereafter filed for bankruptcy.

Ventech was a family-run company from the early 1970s until 2011, when the Stanleys sold a 70% stake to Cooper Investment Partners. After the sale, Kevin Stanley continued to serve as CEO and Kreg Stanley continued to serve as President until 2015. From that point on, Bill, Kevin, and Kreg Stanley served on Ventech's Board as directors but were not involved in the company's management. By the time Ventech went bankrupt in May 2017, the Stanleys' 30% ownership share had decreased to about 9%.

Johnny Virgin served as Vice President of Procurement, Contracts, Logistics, and Material Management, from September 2015 until Ventech's bankruptcy. Virgin has more than thirty years of experience in procurement and logistics, securing materials and organizing supply chains for engineering and construction projects around the world, with a focus on the oil and gas industry.

Ian Anderson became CEO after Kevin Stanley left the position in fall 2015. He had significant experience in the oil and gas industry, including as a CEO. Starting in the first quarter of 2017, Anderson focused on marketing the company and tried to locate a buyer for it until bankruptcy was filed.

The "Ark City" equipment is comprised of two process units from an oil refinery originally built in Arkansas City, Kansas in 1987. Ventech acquired the process units in 2003 for a Ukrainian

client that planned to use them in a new refinery, but that refinery was never built.  Then, in 2005, Ventech sold the Ark City units to PSI, which, as alleged in the Complaint, could not pay for them. Compl. ¶ 19.  PSI stopped development of its Pakistan project in 2007 and later went bankrupt.  In 2008, a third buyer, CALS India, purchased an option on the equipment but also failed to complete its planned project.  The Ark City units thereafter sat outside on Ventech's fabrication yard near Houston until its bankruptcy in 2017.

Velocys, Inc., is a London-based, publicly traded oil and gas company.  The Velocys contract at issue arises from Velocys's "GTL," or gas-to-liquids, reactor technology.  Velocys reactors can economically turn gas (such as methane) into pure diesel and other fuels.  The company's innovation is that its GTL technology works on a small scale, with its reactors arrayed horizontally so that they can be designed into modularized, small plants, as opposed to the technology used by competitors, which require large, multi-story units to make the technology economical.  Together with Cooper Investment Partners, the Stanley family formed a company with NRG Energy, Waste Management, and Velocys, called ENVIA Energy, with a plan to build GTL plants across Waste Management's landfill sites nationwide.  Ventech itself had no ownership interest in ENVIA, but it was the engineering, procurement, and construction ("EPC") contractor for ENVIA.

## LEGAL STANDARD

A complaint must include a "short and plain statement of the claim" "in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss under Federal Rule 12(b)(6), which has been incorporated into bankruptcy rules via Fed. R. Bankr. 7012(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  The complaint need not have detailed factual allegations, but it must be clear. *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Federal Rule 9(b) requires plaintiffs to satisfy a heightened pleading standard for claims alleging fraud.  Such claims must "state with particularity the circumstances constituting fraud," including claims such as actual fraudulent transfer.  Fed. R. Civ. P. 9(b); *Baker v. Great N. Energy, Inc.*, 2015 WL 11120878, at *3 (N.D. Tex. June 18, 2015).  Generally, breach of fiduciary duty claims must be pled under Rule 8's standard, but "courts have applied the heightened pleading standards of Rule 9(b) to … breach of fiduciary duty claims that are predicated on fraudulent conduct," such as duty of loyalty violations.  *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 363 (Bankr. S.D. Tex. 2009).

Delaware law governs the substantive duties of directors, raised in Counts X and XI, because the entity for which the Stanleys and Ian Anderson served as directors is a Delaware limited liability company.[2]   Tex. Bus. Orgs. Code Ann. § 1.102 (specifying internal affairs governed by law of state of incorporation); *Hollis v. Hill*, 232 F.3d 460, 464–65 (5th Cir. 2000) (Texas follows the internal affairs doctrine so the law of incorporation state governs); *In re Kilroy*,

---

[2] The Trustee alleges that the Stanleys were each "Debtor Ventech and Debtor Ventech International's director," and alleges that Anderson was "an officer/director of Ventech and Ventech International."  Compl. ¶ 12, 13, 14; Compl. ¶ 16.  Based on the filings of both Debtors, the Stanleys and Anderson served as directors for Ventech GP LLC, a Delaware limited liability company.  Ex. 1, Form 207 Statement of Financial Affairs for Ventech Engineers L.P. (Ex. 1-A; Case No. 17-33203, ECF No. 4) and Ventech Engineers International LLC (Ex. 1-B; Case 17-33210, ECF No. 3), at Attachment 28 and 29.  But as described below, under either the laws of Delaware (the state of incorporation for Debtor Ventech and Ventech GP LLC) or Texas (the state of incorporation for Debtor Ventech International), the same legal conclusion applies.

357 B.R. 411, 425 (Bankr. S.D. Tex. 2006) (holding that because company was "a limited liability

company incorporated in Delaware … the substantive laws of Delaware apply").

**ARGUMENT**

The Complaint's often confusing allegations fail as a matter of law to state a claim on most

counts.  None of the claims has any merit, but Counts I, III, and XI should be dismissed entirely,

and Count X should be dismissed as to the Velocys-related claim and the duty of care claim.

**I.     The Complaint Fails to State a Claim for Actual Fraudulent Transfer Against Five
        Star Properties.  (Counts I and III)**

Counts I and III allege an actual fraudulent transfer of the Ark City equipment under

Section 548(a)(1)(A) and Texas Business & Commerce Code § 24.0005(a)(1).  These claims must

be dismissed because the allegations fail to meet Rule 9(b)'s heightened pleading standard.

Section 548(a)(1)(A) of the Bankruptcy Code governs "actual" fraud and allows a trustee

to avoid a transfer made only "with *actual intent* to hinder, delay, or defraud any entity to which

the debtor was or became . . . indebted." 11 U.S.C. § 548(a)(1)(A) (emphasis added).  Similarly,

under the Texas Code, transfer is actually fraudulent only "'if the debtor made the transfer . . . with

*actual intent* to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code §

24.005(a)(1) (emphasis added).  Therefore, to plead a claim for actual fraud, a plaintiff must plead

that the defendant had the requisite intent.  *See Baker*, 2015 WL 11120878, at *3 (noting that a

plaintiff must satisfy Rule 9(b) in pleading a claim under the Texas Uniform Fraudulent Transfer

Act claim or under Section 548).  The Complaint fails to do this.

While the Trustee alleges that "Ventech intended to hinder, delay or defraud its creditors

by transferring its interest in Ark City . . . to Defendant Five Star," Compl. ¶¶ 48, 56, this

conclusory allegation should not be credited on a motion to dismiss, *see Goodman v. H.I.G.

Capital, LLC*, 491 B.R. 747, 768 (Bankr. W.D. La. 2013) (finding that "the Trustee ha[d] not met

6

the burden required under Rule 9(b) to plead actual fraud" where he pleaded "no facts (as opposed to conclusions)").

Further, the Complaint does not adequately plead the badges of fraud" that may circumstantially allege fraud in some cases. *See Soza v. Hill*, 542 F.3d 1060, 1066–67 & n. 5 (5th Cir. 2008) (listing the badges of fraud). First, the Trustee pleads that "[t]he transfer occurred less than one month prior to Petition Date." Compl. ¶¶ 48, 56. But the timing of the sale is not dispositive; if it were, the intent element of actual fraudulent transfer would be eviscerated.

Second, the Trustee's allegations are insufficient because he does not even include which persons at Ventech acted with the requisite intent. The Trustee pleads that "Defendant Kreg Stanley, as agent for Defendant Five Star, signed the Bill of Sale . . ." Compl. ¶¶ 48, 56. But the Trustee gives no explanation why the signatory for the *purchaser* is relevant to the intent of the debtor-seller. *Cf. S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007) ("The statute requires only a finding of fraudulent intent on the part of the 'debtor' . . .").

Third, the Trustee pleads that the book value for the Ark City equipment significantly exceeded the value established at auction, which the Complaint presents as de facto proof of fraud. *See* Compl. ¶¶ 48, 56. The Trustee's apparent theory is that the sale could not have been conducted fairly because the value determined at auction was much less than its book value. *See* Compl. ¶ 20 (noting that appraisal was done to "accurately book the value of the asset on its audited financial statements"); Compl. ¶ 35. But courts regularly recognize that "book value" is often unattainable at auction, especially if a sale must be made within a specific period of time, *see BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 539 (1994), or when a company is going through a transition or other upheaval, *see Howell v. Fulford and SRH Holding Co., LLC*, 561 B.R. 810, 816–17 (Bankr. N.D.

Ga. 2016). In other words, there is nothing inherently suspicious in the fact that book value is not realized at auction.

Indeed, contrary to the Trustee's theory, courts across the country have held that the price set in a competitive auction is, by definition, the reasonably equivalent value of an asset. *See, e.g., Milbank v. Sharpshooter II, Inc.*, 559 B.R. 143, 151 (Bankr. N.D. Tex. 2016); *Cty. of Clinton v. Warehouse at Van Buren St., Inc.*, 496 B.R. 278, 283 (N.D.N.Y. 2013); *Stettin v. The Dan Marino Found., Inc.*, 483 B.R. 15, 21 (Bankr. S.D. Fla. 2012). Therefore, the discrepancy between the book value and auction value of the Ark City equipment is not a "badge of fraud."

Fourth, the Trustee omits necessary information related to several of his allegations that seem intended to aver fraud. For example, the Trustee pleads that Ventech "did not obtain a lien release from its secured lender" for the sale, Compl. ¶¶ 48, 56, but he fails to plead any facts suggesting why this is relevant; he does not even plead that the secured lender had a lien over the Ark City equipment. The Trustee also alleges that Ventech "misreported" the Ark City equipment sale on its Statement of Financial Affairs, which listed a sale of "fabrication shop assets" for $157,723. Compl. ¶ 38. The Complaint repeatedly alleges that the Ark City process units sold for $32,723, *e.g.* Compl. ¶¶ 48, 56, but the Trustee never explains this discrepancy between $157,723 and $32,723, or how it relates to the alleged fraud. These amorphous assertions merely imply nefarious intent but do not satisfy the legal requirements for asserting claims of fraud. *See, e.g., Wiebe v. Benefits Mgmt. Corp.*, 1993 WL 246096, at *3 (D. Kan. June 17, 1993) (explaining that "the court properly found that a generalized and amorphous assertion of 'conspiracy' was insufficient to reasonably apprise the defendants of the nature of the claims against them, and therefore failed to satisfy the requirements of Rule 9(b).").

Thus, the Trustee has failed to plead adequately fraudulent intent, and Counts I and III should be dismissed.

## II.     The Complaint Fails to State a Claim for Breach of Fiduciary Duty Against Johnny Virgin and Ian Anderson.  (Count XI)

The Complaint fails to state a claim for breach of fiduciary duty against Johnny Virgin and Ian Anderson because their involvement in the sale of the Ark City equipment is protected by the business judgment rule.  Further, because the duty of loyalty is not implicated, Ian Anderson, as a director, is exculpated by Ventech's Articles of Incorporation.

### A.     Virgin's and Anderson's Actions are Protected by the Business Judgment Rule.

Virgin's and Anderson's decisions and actions are protected by Delaware's robust business judgment rule, which "is a presumption that in making a business decision the directors ... acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the corporation."  *Brehm v. Eisner*, 746 A.2d 244, 264 & n. 66 (Del. 2000).  This presumption also applies to corporate officers.  *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (explaining that "overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task" and that a "plaintiff may overcome the presumption that directors and officers acted in good faith" by showing that a decision was egregious).  Under Delaware law, the Trustee must specifically plead reasons why that presumption has been rebutted. *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1279 (Del. 1989) (courts "should decline to evaluate the wisdom and merits of a business decision unless sufficient facts are alleged with particularity…."). "Procedurally speaking, the rule places on plaintiffs the burden of pleading facts sufficient to rebut

the presumption" that officers and directors acted in the best interests of the company. *In re Xtreme Power Inc.*, 563 B.R. 614, 642 (Bankr. W.D. Tex. 2016).[3]

Here, the Complaint fails to rebut this presumption. It says only that Anderson "directed and oversaw" Virgin's actions to "market[] the sale of Ark City for approximately one week,"[4] and that this was "wholly inadequate for an asset like Ark City[.]" Compl. ¶¶ 35, 95. But the Complaint does not explain how many weeks it "should" have been marketed, or on what basis the Trustee purports to know what the proper marketing of complex, decades-old oil refinery equipment is. Courts routinely dismiss claims when nothing more specific is alleged. *E.g., ATP Oil & Gas Corp.*, 711 Fed. App'x at 222 (dismissing claim in part because "the Trustee concludes without evidentiary support that the bonuses in question were excessive. Even at the pleading stage, the Trustee still needs to state claims with specificity—conclusory allegations will not suffice."). Without more specific allegations explaining why the auction process was deficient, Anderson's direction and Virgin's marketing are protected by the deferential business judgment rule, and the Court should decline to "interfere with the managerial decision[s]" of Virgin and Anderson. *Omnicare, Inc. v. NCS Healthcare, Inc*., 818 A.2d 914, 928 (Del. 2003).

Importantly, Delaware law does not require that directors and officers do things perfectly; the question is whether the action was reasonable. *Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 45 (Del. 1994); *RSH Liquidating Tr. v. Magnacca*, 553 B.R. 298, 318 (Bankr.

---

[3] Texas's business judgment rule is similar. "The business judgment rule in Texas generally protects corporate officers and directors, who owe fiduciary duties to the corporation, from liability for acts that are within the honest exercise of their business judgment and discretion." *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015). Further, "courts typically do not intervene in corporate affairs unless officers or directors commit acts that are ultra vires, fraudulent, or oppressive to minority shareholder rights." *ATP Oil & Gas Corp.*, 711 Fed. App'x at 221. Thus, Anderson's and Virgin's actions are protected under the Delaware and the Texas business judgment rules.

[4] Based on the facts alleged in the Complaint, Ventech had been "searching for buyers" for the Ark City equipment since 2007, when Ventech took legal possession of it from Ventech's customer PSI. Compl. ¶ 19. Because the Ark City units were still in Ventech's possession in 2017, Compl. ¶ 34, Ventech apparently had not been able to complete a sale of the equipment for nearly a decade. Thus, the full length of the "marketing" was close to 10 years.

N.D. Tex. 2016) (noting that directors "did not employ a perfect process" but dismissing them under Rule 12(b)(6) anyway).  The Trustee has failed to adequately allege that Virgin's and Anderson's actions were anything but reasonable under the circumstances.

**B.      Ventech's Articles of Incorporation Immunize Anderson from Any Duty of Care Liability.**

As a director, Ian Anderson is exculpated from duty of care violations under Delaware law by Ventech's Articles of Incorporation.  The Complaint does not allege any facts that implicate the duty of loyalty, such as self-dealing or a self-interested transaction.  *Cf. In re Schepps Food Stores, Inc.*, 160 B.R. 792, 797 (Bankr. S.D. Tex. 1993) ("The duty of loyalty prohibits self-dealing and the usurpation of corporate opportunities.").  Rather, the Complaint only states that Anderson breached his duties to Ventech when he "failed to use the care requisite of [his] position[]."  Compl. ¶ 94.

Under Delaware law, a company may exculpate a director for personal liability arising from a breach of the duty of care by so stating in the corporation's articles of incorporation.  Del. Code Ann. tit. 8, § 102(b)(7).  Ventech's Board of Directors is protected by such a clause.[5] Ventech GP's "Amended and Restated Limited Liability Company Agreement" states that:

> No Director or Officer will be liable to the Company or to any Member for any act or failure to act, unless such Person's action or failure to act constituted fraud, willful misconduct, criminal wrongdoing, gross negligence or a bad faith violation of the implied contractual covenant of good faith and fair dealing.

---

[5] The Court may take judicial notice of a company's articles of incorporation or charter.  *In re Xtreme Power*, 563 B.R. at 630–31 (taking notice of Delaware certificate of incorporation to review the exculpatory clause and dismissing claim based on the business judgment rule); *McPadden v. Sidhu*, 964 A.2d 1262, 1273 n.28 (Del. Ch. 2008) ("The court may take judicial notice of [a company's] certificate [of incorporation] in deciding a motion to dismiss.").

Ex. 2 ("Articles of Incorporation") at Section 10.09.  This exculpates Anderson from any claim for which there are no allegations of fraud, such as the duty of care violations alleged in Count XI.[6]

The Delaware Supreme Court has held that it is appropriate to dismiss a director against whom only exculpated claims are alleged at the Rule 12(b)(6) stage.  *In re Cornerstone Therapeutics Inc, Stockholder Litig.*, 115 A.3d 1173, 1179–80 (Del. 2015).  Federal courts in Texas have similarly dismissed defendants when the only claim pled is one that is exculpated in a company's articles of incorporation or charter.  *See, e.g., Hack v. Wright*, 396 F. Supp. 3d 720, 736 (S.D. Tex. 2019) (dismissing disinterested directors); *Superior Offshore Int'l, Inc. v. Schaefer*, 2011 WL 4007888, at *1 (S.D. Tex. Sept. 8, 2011) (dismissing duty-of-care portion of claims against some directors).

Accordingly, Count XI of the Complaint against Anderson must be dismissed because he is exculpated for duty of care violations by Ventech's Articles of Incorporation, as well as because his actions are protected under Delaware's business judgment rule.

## III.   The Complaint Fails to State a Claim for Breach of Fiduciary Duty Against Kevin Stanley and Kreg Stanley Related to the Velocys Reactors.  (Count X)

The Complaint asserts that Kevin Stanley and Kreg Stanley breached fiduciary duties owed to Ventech for some transfer involving Velocys reactors.  But the Complaint fails to explain what Kevin Stanley and Kreg Stanley did wrong or how Ventech was harmed, and thus fails to meet the requirements of Rule 8, much less Rule 9(b).  For these reasons, this claim must be dismissed.

---

[6] Texas has a statute analogous to Delaware's § 102(b)(7), Tex. Bus. Orgs. Code Ann. § 7.001.  It operates in a similar way, so the same legal conclusion applies whether the analysis is conducted under Texas or Delaware law.  *See In re Life Partners Holdings, Inc.*, 2015 WL 8523103, at *8–9 (W.D. Tex. Nov. 9, 2015).

A. **The Velocys-Related Breach of Fiduciary Duty Claim Is Unclear and Fails to Meet Rule 8's Pleading Requirements.**

A complaint must "give the defendant fair notice" of what the claim is. *Twombly*, 550 U.S. at 555. Here, the Trustee claims that Kreg Stanley and Kevin Stanley transferred Ventech's interest in an asset worth $3.5 million. But reading through the Complaint, it is not even clear *what* was allegedly transferred, *how* the transfer occurred, or *when* the asset was transferred. For example, it is unclear whether the Complaint refers to a contract for a reactor, to a reactor, or to multiple reactors that were already built. *Compare* Compl. ¶ 41 ("a valuable contract interest in the fabrication of the Velocys Reactor") *with* ¶ 42 ("its interest in the Velocys Reactor") *and* ¶ 90 ("the transfer of the Velocys Reactors"). The Complaint insufficiently alleges basic facts related to the purported breach of fiduciary duty, including the following.

***How the "transfer" occurred.*** Kevin and Kreg Stanley are alleged to have breached their duties by "allowing Ventech's interest in the Veloicy [sic] Reactor … to be transferred to Velocys." Compl. ¶ 90. The Trustee does not say how the transfer was effected or how they allowed it to happen. In fact, the Complaint includes little detail on the transfer. It alleges that "Ventech did not have possession" of a reactor, and that Ventech nonetheless kept the value of the asset on its books for years. Compl. ¶ 41. But the Trustee does not—and cannot—allege that any law or accounting rule required Ventech to have "possession" before it could recognize an asset on its books. The Complaint next alleges that, at some unspecified point, *Velocys* changed its accounting treatment of the "non-refundable amounts from Ventech previously recorded in deferred income in respect of the cancellation of a contract with Ventech for reactors" to "Other Income." Compl. ¶ 42. That is the sum total of the allegations made about the transfer: the value of a Velocys reactor(s) was once on Ventech's books, and then later it was on the books of Velocys, an entirely separate company over which Kevin and Kreg Stanley had no control.

Perhaps the Trustee means to allege that the "transfer" was some type of accounting error or fraud, and then link it to Kevin or Kreg Stanley; if so, this attempt also utterly fails.  First, even if there was an accounting error at Ventech that impacted the recognition of the Velocys asset, Kevin and Kreg Stanley were not responsible for such an error.  They were not audit committee members; neither was ever Ventech's chief accounting officer, and neither is a CPA.  As Board members, they were entitled to rely on management and Ventech's outside auditor to prepare accurate financial statements.  8 Del. C. § 141(e); *see also, e.g.*, *Buckley Family Tr. v. McCleary*, 2020 WL 1522549, at *11 (Del. Ch. Mar. 31, 2020) (dismissing complaint for failing "to allege facts suggesting that the directors relied on management's opinions or reports in bad faith").[7] Second, the Complaint does not even allege that Kevin and Kreg Stanley influenced the accounting treatment of any Velocys reactor(s) or that they were aware of any "red flags" that should have led them to question the judgment of Ventech's accounting department.  Therefore, the Complaint fails to state a claim arising from any accounting error that might be inferred from its sparse allegations regarding the "transfer" of Velocys reactor(s).

**When the "transfer" occurred**.  Perhaps if the Trustee alleged when the transfer occurred, it would be easier to determine what the 'transfer' was.  But the Complaint does not allege this either.  Velocys's "own disclosures" (according the Complaint) say that it "recognized the revenue at the point at which the probability criterion was met."  Compl. ¶ 42.  The Complaint does not give a date, or even describe the document from which the excerpt is taken, so we cannot know what that probability criterion was (or whether it mattered), or determine when it happened.[8]  The

---

[7] The same result applies in Texas.  *See* Tex. Bus. Orgs. Code Ann. § 3.102(a); *In re Life Partners*, 2015 WL 8523103, at *15 (finding that "Outside Directors were entitled to rely on management's analyses").

[8] Velocys is a public company and is traded on the London Stock Exchange's AIM sub-market.  We presume that is how the Trustee found this information.  Because the Complaint seems to rely on this unidentified document, the Trustee should have-included a link to the website where he found it, or at least described the document in sufficient detail such that Kevin and Kreg Stanley could understand the case the Trustee attempts to make against them.

14

Complaint's quoted paragraph from Velocys says that the recognized revenue was for "non-refundable amounts" under the contract, which implies that any "transfer"—or payment—happened in the past. Compl. ¶ 42. The Complaint does not allege anything about when the value was added or removed from Ventech's books, so we cannot know what was changed at Ventech. Without more detail about the transfer or about Ventech's own accounting, we cannot determine when it happened.

  *The nature of the Ventech-ENVIA relationship*. The Complaint includes an email from Ian Anderson to someone named Precely Pabrua at Ventech—presumably a person responsible for assembling estimates, though the Complaint does not say. Compl. ¶ 44. Anderson asks this employee to "list major categories … that we missed or made a mistake in our original estimate. For example I know we did not have the right quantity of pipe in the original estimate and we had underestimated construction costs." Compl. ¶ 44. Anderson explains the reason for this is that ENVIA is "look[ing] at other potential investments, in slightly larger GTL plants" and "Kevin wants to be prepared to defend any estimate prepared by Ventech." Compl. ¶ 44. The Trustee uses the email to "explain[] the relationship" between ENVIA and Kevin Stanley, to try to show that Kevin Stanley was acting for ENVIA's benefit and not for Ventech's.

  But this explanation strains plausibility and certainly does not meet the standard set by *Twombly* and *Iqbal*. When a simpler explanation fits the behavior alleged, a complaint's convoluted theory fails. *Twombly*, 550 U.S. at 557 (finding parallel conduct was better explained as normal commercial efforts as opposed to as conspiracy); *Iqbal*, 556 U.S. at 682 (finding that Arab-Muslim men's disproportionate membership in Al Qaeda is a better explanation for their disproportionate arrests than racial discrimination).

15

Here, based solely on reading the email copied into the Complaint, what happened is much simpler than the Trustee's convoluted allegations. Compl. ¶ 44. ENVIA was planning to build additional GTL plants. Ventech was the EPC contractor for the first plant, *see* Compl. ¶ 44, and it would be lucrative for Ventech to build more plants for ENVIA. Kevin Stanley wanted to make sure that ENVIA continued to employ Ventech as its EPC contractor, so he asked Ventech to make sure its estimates were corrected and updated so that he could defend them. Compl. ¶ 44. The only reasonable inference from the email is that Kevin Stanley wanted Ventech to do more business with a company that was expanding. His request of Ian Anderson, and Anderson's email to the Ventech employee, shows that Kevin Stanley is trying to put Ventech in a stronger position with ENVIA. As in *Twombly*, where plaintiffs saw conspiracy but the Supreme Court found merely ordinary commercial behavior, here the Trustee sees malfeasance but this Court should instead recognize an engineering and construction company seeking additional business. *Twombly*, 550 U.S. at 554.

**Other deficiencies in the allegations.** There are many other insufficiently alleged facts in this portion of the Complaint. For example, apparently to try to show an accounting error, the Complaint includes an email purportedly from someone at Ventech named Lorrie Campbell-Debaylo, but does not explain who she is or what position she held. Compl. ¶ 40. Without this basic context, her statements about accounting cannot be credited. In addition, the central issue to the Velocys-related claims is the value of the reactor(s) under the contract, which the Complaint itself tells us was cancelled. Compl. ¶ 42. But the Complaint does not describe the contract or why it was cancelled. Courts—and, indeed, Defendants, should not have to guess at the meaning of a complaint. *Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

"show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).).  This is an additional, sufficient reason to dismiss the breach of fiduciary duty claim related to the Velocys reactor(s).

**B.    The Velocys-Related Breach of Fiduciary Duty Claim Does Not Meet Rule 9(b)'s Heightened Pleading Requirements.**

"Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."  *In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 128 (Bankr. S.D. Tex. 2010) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).  As described above, the claim does not even meet Rule 8's standard; it is not clear what the "what" is.  Similarly, the Complaint fails to include the information necessary to understand the allegations and satisfy Rule 9(b)'s heightened pleading standards.

The Trustee's theory about Kevin and Kreg Stanley's self-dealing does not make sense.  The Complaint alleges that they "allowed to be transferred" some sort of interest in one or more reactors, from Ventech to Velocys.  Compl. ¶ 42.  The Complaint does not allege that Kevin and Kreg Stanley were owners of Velocys.  Still, the Complaint avers, this was self-dealing because the Ventech-Velocys "transfer" of an interest in a reactor benefited a third company, ENVIA.  Comp. ¶ 43.  The Complaint does not explain why any transfer to Velocys did not merely benefit Velocys.[9]

The Trustee claims that "on information and belief, the transfer of the interest in the Velocys Reactor [from Ventech to Velocys] was to the benefit of ENVIA Energy LLC".  Compl. ¶ 43.  The "benefit" was, the Complaint says, that Velocys had a "team of technical

---

[9] This statement takes as true the allegations in the Complaint; the Defendants are not agreeing that a transfer took place.  In addition, the cancellation of a contract may result in Velocys' recognition of revenue as described in ¶ 42, but it may, in fact, be a large loss for the company financially, and thus it would not be a 'benefit' to the company at all.

advisors" help ENVIA meet its construction targets after Ventech's bankruptcy.  Compl. ¶ 43.
However, the Complaint does not state how Velocys' provision of technical assistance to one of
its customers on a preexisting project was somehow the result of, or even connected to, the
"transfer" facilitated by Kevin and Kreg Stanley

But *even if* there was a benefit to ENVIA based on the transfer from Ventech to Velocys,
the theory is nonsensical.  The Complaint seems to imply that Kevin and Kreg Stanley got a
"personal benefit" when they allegedly transferred the interest in a reactor or reactors from
Ventech, the company they owned together with Cooper Investment Partners, to a company they
owned together with Cooper Investment Partners *and also with* NRG Energy *and* Waste
Management *and* Velocys.  Again, it makes no sense that any alleged transfer to Velocys was
actually a benefit to an entirely separate company, ENVIA.[10]  But why would Kevin and Kreg
Stanley transfer $3.5 million from a company that they owned a portion of to another company
that they owned a smaller portion of?[11]  The Complaint does not allege how that would benefit
them, or why they would do it.  If Ventech was near insolvency, then it would seem in their interest
as part owners of Ventech to do all they could to help Ventech, not to give away money to Velocys,
a separate company that the did not own or control.

Because the Complaint fails to allege there was a personal benefit to Kevin and Kreg
Stanley, or to string together a theory of how or why they would (or could) allow the transfer, this
claim must be dismissed because if fails to meet Rule 9(b)'s pleading standard.

---

[10] The Complaint does not allege that ENVIA was an alter ego of Velocys, Ventech, or Ventech Private Investment,
the company co-owned by Cooper Investment Partners and the Stanley family.

[11] Though the Complaint does not make clear when the 'transfer' occurred, if it happened in fall 2016, the Stanleys
owned about 10-15% of Ventech.  They never owned more than 9% of ENVIA.

### C. The Velocys-Related Duty of Care Violation Is Exculpated by the Articles of Incorporation.

The alleged duty of care violation against Kevin and Kreg Stanley related to the Velocys reactor(s) also fails because they are exculpated under Ventech's Articles of Incorporation, for the same reasons the Complaint's alleged duty of care violation against Anderson fails. *See* discussion *supra* II.B; Ex. 2 at Section 10.09.

## IV. The Complaint Fails to State a Claim for a Duty of Care Violation Against the Stanleys Related to the Ark City Equipment. (Count X)

Ventech's Articles of Incorporation also exculpate the Stanleys from personal liability for any alleged duty of care violation related to the Ark City equipment sale. *See* discussion *supra* II.B; Ex. 2 at Section 10.09. Accordingly, the Trustee's duty of care claim in count X, Compl. ¶ 89, must be dismissed as well.[12]

### CONCLUSION

The following counts in the Complaint fail to state a claim under Rule 12(b)(6):

- The actual fraudulent transfer claims against Five Star Properties, Counts I and III, fail because they do not meet Rule 9(b)'s pleading requirements.

- The breach of fiduciary duty claim against Johnny Virgin, Count XI, fails because it alleges only a duty of care violation, and his actions are protected by the business judgment rule.

---

[12] The Stanleys do not, at the motion-to-dismiss stage, challenge the duty of loyalty claim based on the Ark City units because there are material issues of fact. Nonetheless, the Stanleys are confident that the sale of the Ark City equipment was entirely fair and that the Trustee will ultimately lose on his duty of loyalty claim. The equipment's fair market value was determined in an auction—and the Stanleys later agreed to purchase the Ark City equipment at the price determined in the auction. Because Ventech would have received the same price for the equipment whether it was bought by Five Star or the highest bidder, the transaction was entirely fair to the company. *See Landon v. S & H Mktg. Grp., Inc.*, 82 S.W.3d 666, 672–73 (Tex. App.—Eastland 2002, no pet.) (citations omitted).

- The breach of fiduciary duty claim against Ian Anderson, Count XI, also fails because it alleges only a duty of care violation, and his actions are protected by the business judgment rule.  This claim should also be dismissed because any duty of care violation is exculpated by Ventech's Articles of Incorporation.

- The Velocys-related breach of fiduciary duty claim against Kreg Stanley and Kevin Stanley, Count X, fails because (1) it does not give fair notice of the claim under Rule 8; (2) does not meet Rule 9(b)'s standard for the alleged duty of loyalty breach; and (3) any duty of care violation is exculpated under Ventech's Articles of Incorporation.

- The Ark City-related breach of the fiduciary duty of care against the Stanleys, Count X, is exculpated by the Articles of Incorporation.

Five Star, the Stanleys, Johnny Virgin, and Ian Anderson respectfully ask the Court to grant their partial motion to dismiss these claims with prejudice.

Dated:  June 2, 2020                          KING & SPALDING LLP


                                              */s/ Paul R. Bessette*
                                              Paul R. Bessette
                                              Texas Bar No. 02263050
                                              S.D. Tex. Bar No. 22453
                                              Jill R. Carvalho
                                              Texas Bar No. 24087266
                                              S.D. Texas Bar No.  2888436
                                              500 W. 2nd Street, Suite 1800
                                              Austin, Texas 78701
                                              (512) 457-2000
                                              (512) 457-2100 (Fax)

                                              *Counsel for Defendants Five Star Properties*
                                              *Broadway LLC, Kreg Stanley, Kevin Stanley,*
                                              *Bill Stanley, Johnny Virgin, and Ian Anderson*




## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by

electronic transmission to all registered ECF users appearing in the case on June 2, 2020.

                                              */s/ Paul R. Bessette*
                                              Paul R. Bessette